UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

MILWAUKEE HEALTH SERVICES, INC.
2555 N. Dr. Martin L. King Dr.
Milwaukee, WI 53212,

       Plaintiff,

  v.

BUSINESS COMPUTER APPLICATIONS,
INC.
950 East Paces Ferry Road, Suite 1810
Atlanta, GA 30326,

       Defendant.

Case No. _____

---

### PLAINTIFF MILWAUKEE HEALTH SERVICES, INC.'S COMPLAINT

---

Plaintiff Milwaukee Health Services, Inc. ("MHSI"), through its attorneys, complains of Defendant Business Computer Applications, Inc. ("BCA") as follows:

1. MHSI is a corporation organized and existing under the laws of the State of Wisconsin with a principal place of business of 2555 N. Martin L. King, Jr. Drive, Milwaukee, Wisconsin 53212.

2. MHSI is a Federally Qualified Health Center ("FQHC") that serves about 30,000 patients each year in Milwaukee, Wisconsin.

3. MHSI offers preventative health, wellness and chronic disease management in primary care including by physicians specializing in the care of underserved populations. MHSI's comprehensive services include Pediatrics, Family Medicine, Internal Medicine, Obstetrics and Gynecology, Midwifery, Podiatry, HIV Infectious Disease, Oral Health, Adult and Child Psychiatry. Additional onsite services offered include: behavioral health therapy,

outreach social services, prenatal and chronic disease nursing case management, patient education, WIC and nutritional services, insurance benefit determination and pharmacy. MHSI serves everyone regardless of income or third party coverage and seeks to provide high quality care in accessible locations in Milwaukee County.

4. From January 2006 to May 2011, Dr. Tito Izard served as Chief Medical Officer ("CMO") for MHSI. From August 2010 to May 2011 he served as the Interim President/CEO and CMO for MHSI after then-President/CEO C.C. Henderson died in August 2010. C.C. Henderson had served as MHSI President/CEO from 2002 until August 2010.

5. Upon information and belief, BCA is a corporation organized and existing under the laws of the State of Tennessee, with a principal place of business of 2180 Satellite Boulevard, Suite 325, Duluth, Georgia 30097 and provides information technology products and services for the health care industry and public health infrastructure.

6. This Court has subject matter jurisdiction pursuant to 28 USC §§ 1331 and 1332.

7. On November 30, 1999, MHSI entered into a Standard Service Agreement, a Standard Maintenance Agreement a Standard License Agreement, and a Hardware End User Agreement with Business Computer Applications, Inc. ("BCA") for use of a Clinic Management System ("CMS") that assisted MHSI with appointment scheduling, patient billing, and accounts receivable, among other things (hereinafter called "CMS Agreement").

8. On July 1, 2008, MHSI entered into a Business Associate Confidentiality Agreement, a Software License Agreement, a Third Party Software and Hardware End User Agreement, a Software Maintenance Agreement, an Application Service Provider Hybrid Data Center Support Services Agreement, and a Service Agreement with BCA for purposes of developing, installing and using an electronic medical record system ("Pearl EMR") (hereinafter

called "EMR Agreement") that would integrate with the existing appointment scheduling and patient billing CMS practice management system.

9. Despite MHSI paying BCA $3,083,607.64 since 2008 under the EMR Agreement and CMS Agreement, the Pearl EMR developed and installed by BCA has failed to be fully functional.

10. Nevertheless, the Pearl EMR currently is the only way for MHSI to access patient records housed on MHSI servers.

11. These patient records contain clinical notes, medical specialist authorization requests, medication lists, problem lists, allergy reports, pediatric immunization records, obstetric documents, hospital records, surgical and consultation reports, pre-op documents, mammography and radiographic reports and chronic disease treatment plans for approximately 40,000 individuals.

12. The EMR Agreement was set to expire on June 30, 2013. Because of the various problems with implementation, failure of the Pearl EMR to ensure compliance with HIPAA, HITECH Act and Meaningful Use Stage II criteria as well as escalating expenses incurred with the Pearl EMR, MHSI decided to migrate to another EMR product, GE Centricity.

13. Before the expiration of the EMR Agreement, MHSI tried to address the transition from the Pearl EMR to the GE Centricity EMR by exploring a temporary extension of the Pearl EMR licensing agreement or the provision of a removable disk containing all the patient records so that MHSI would not face any disruption in patient record access. (Affidavit of Tito Izard, M.D. (hereinafter "Izard Aff."), ¶ 10, Exhibit A) (July 5, 2013 Email from Dr. Tito Izard to Albert Woodard noting that Albert had specifically stated on June 21st that he could

provide MHSI with a jump drive of all MHSI patient records if MHSI did not extend the license agreement.).

14. BCA falsely represented to MHSI that it would not have any disruption in patient care during these negotiations because BCA has not followed through on its promise to either maintain Pearl EMR connectivity or provide MHSI with a jump drive so that MHSI could have access to its patient records.

15. BCA's legal counsel wrote MHSI on June 5, 2013 stating that MHSI owed BCA $285,097.03 for products and services and that the letter served as a "final pre-litigation notice." (Izard Aff., ¶ 12, Exhibit B.)

16. As stated above, over the course of the EMR Agreement, MHSI paid BCA $3,083,607.64 for the Pearl EMR and CMS Agreement and had recently made payments to BCA of $8,443 on May 2013 and $25,400 in April 2013.

17. Despite these recent payments, numerous requests by MHSI for documentation of the authorized detailed expenditures alleged by BCA and continuous discussions between Dr. Izard and BCA's CEO about not disrupting patient record access while MHSI transitioned to GE Centricity, BCA terminated MHSI's access to the Pearl EMR on June 30, 2013 by performing an unauthorized remote disconnection from MHSI's personal local servers housing MHSI's patient data.

18. As a result of this unauthorized access to MHSI's servers, since July 1, 2013, MHSI has been unable to access patient records for purposes of providing treatment, jeopardizing the health and safety of about 40,000 people.

19. Since July 1, 2013, MHSI has made repeated requests to BCA to restore Pearl EMR connectivity or provide MHSI with a removable disk containing all the patient records in a

readable format so that MHSI could continue providing treatment to its patients, but BCA has refused to provide either. *See* Izard Aff., ¶ 16, Exhibit A (Email exchanges between Dr. Tito Izard and Albert Woodard) and Exhibit C (Letter from MHSI legal counsel to BCA's legal counsel).

20. Despite these repeated requests, good faith efforts to resolve the issue short of litigation and advice from BCA's legal counsel to restore Pearl EMR connectivity, BCA has refused to restore Pearl EMR connectivity or provide MHSI the patient records in a readable format on a removable disk unless MHSI makes a full or substantial payment toward the $285,097.03 it alleges MHSI owes BCA. (Izard Aff., ¶ 17, Exhibit A (July 1, 2013 Email from Albert Woodard to Dr. Tito Izard responding to Dr. Izard's question of how long it would take to re-establish connectivity to MHSI's patient data that BCA despite the advice of BCA's legal counsel to restore Pearl EMR connectivity, BCA would restore connectivity in exchange for approximately $300,000 and July 4, 2013 Email from Albert Woodard to Dr. Tito Izard responding to Dr. Izard's July 3, 2013 Email that stated it has been greater than 48 hours since MHSI patients have had access to any electronic health information that MHSI owes BCA approximately $300,000 in past due accounts receivable and would not provide MHSI with any access without "fair compensation.")).

21. Short of hiring another computer programmer to write a program to retrieve the patient records off MHSI's servers, which could take a very long time, there is no other viable, quick option to retrieve the patient records so that MHSI can use those records for patient treatment.

22. As a result, BCA's refusal to allow MHSI access to its patient records unless it pays MHSI approximately $300,000 has caused a disruption in MHSI's ability to deliver safe

and effective patient treatment and to respond to requests for patient records from patients and others in the community.

## First Cause of Action:
### Violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, et seq.

23. MHSI repeats and realleges the allegations contained in paragraphs "1" through "22" above as if fully restated herein.

24. Despite providing MHSI ongoing assurances that patient care would not be disrupted after the EMR Agreement terminated on June 30, 2013, BCA intentionally accessed through an internet-based Virtual Private Connection MHSI's computer network and server housing MHSI patient data and shut down the patient database on June 30, 2013.

25. MHSI's network and patient data servers are part of an interstate communication system because the network and server are used in communications between MHSI, based in Wisconsin, and outside parties like BCA, based in Georgia.

26. Because of BCA's assurances that patient care would not be disrupted, BCA was not authorized to shut down MHSI's patient database and effectively deny MHSI access to its patient records beginning July 1, 2013.

27. BCA's intentional and unauthorized access to MHSI's network and patient database has caused significant damage to MHSI by impairing MHSI's ability to provide medical care to its 30,000 patients, affecting provider and staff productivity, and adversely impacting MHSI's ability to monitor and implement quality of care interventions and to deliver high quality customer service.

28. BCA's intentional and unauthorized access to MHSI's network and patient database has also created a threat to public health or safety because MHSI providers are unable

to see patient records that inform them of a patient's medical history, including prescription and allergy information.

29. BCA's intentional and unauthorized access violates the federal Computer Fraud and Abuse Act under 18 U.S.C. § 1030(a)(5), caused damage as defined by 18 U.S.C. § 1030(e)(8) and involves the impairment of MHSI's ability to provide medical treatment to its patients and the threat to public health and safety of thousands of patients as required under 18 U.S.C. § 1030(c)(4)(A)(i) and 18 U.S.C. § 1030(g).

30. In addition, BCA's demand for $300,000 in exchange for reconnecting the Pearl EMR or providing MHSI with a jump drive containing MHSI's patient data in a readable format caused damage to MHSI's patient database by making the data unavailable and constitutes extortion in violation of 18 U.S.C. § 1030(a)(7).

30. The total monetary cost to MHSI from BCA's unauthorized shut down exceeds $75,000.

**Second Cause of Action:**
**Violation of Wis. Stat. § 146.82(2)**

31. MHSI repeats and realleges the allegations contained in paragraphs "1" through "30" above as if fully restated herein.

32. BCA's knowing and willful refusal to allow MHSI to access its patient records violates Wis. Stat. § 146.82(2)(2)(a)-(d), which requires the release of patient records to health care providers when the provider is rendering assistance to patients, the provider is consulting patients regarding their health, the patient's life is in danger and the information is needed to render assistance and the provider prepares or stores those patient records.

33. Therefore, MHSI seeks to compel compliance with Wis. Stat. § 146.82(2)(2) under Wis. Stat. § 146.84(1)(c) by restoring access to the Pearl EMR so that MHSI can treat

patients safely and effectively and respond to requests for patient records from patients, providers and others in the community who need those records for legal proceedings, investigations and other legitimate purposes.

34. MHSI is also entitled to exemplary damages, costs and reasonable actual attorney fees because of BCA's knowing and willful violation of Wis. Stat. § 146.82 pursuant to Wis. Stat. 146.84(1)(b).

**WHEREFORE**, MHSI demands immediate declaratory and injunctive relief against BCA as well as Judgment against BCA in an amount to be determined at trial, plus prejudgment interest at the current legal rate, together with attorney fees and the costs and disbursements of this action, and for such other and further relief as the Court deems just and proper.

### JURY DEMAND

MHSI requests a trial by jury in this case.

Dated this 15th day of July, 2013.

s/ Barbara J. Zabawa
Barbara J. Zabawa
State Bar No. 1030917
Eugenia G. Carter
State Bar No. 1011447
Melinda S. Giftos
State Bar No. 1056609

Attorneys for Plaintiff
WHYTE HIRSCHBOECK DUDEK S.C.
555 East Wells Street, Suite 1900
Milwaukee, Wisconsin 53202-3819
Telephone: 414-273-2100
Fax: 414-223-5000
Email: bzabawa@whdlaw.com
    gcarter@whdlaw.com
    mgiftos@whldaw.com