UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MILWAUKEE HEALTH SERVICES, INC.
2555 N. Dr. Martin L. King Dr.
Milwaukee, WI 53212,

    Plaintiff,

v.

BUSINESS COMPUTER APPLICATIONS, INC.
950 East Paces Ferry Road, Suite 1810
Atlanta, GA 30326,

    Defendant.

Case No. 2:13-cv-00797

## AFFIDAVIT OF TITO IZARD, M.D.

STATE OF WISCONSIN    )
                                 )
MILWAUKEE COUNTY    )

    I, Tito Izard, M.D., being duly sworn, states as follows:

    1.    Since May 2011 I have served as the President/Chief Executive Officer ("CEO") for Milwaukee Health Services, Inc., ("MHSI") a Federally Qualified Health Center ("FQHC") that serves about 30,000 patients each year in Milwaukee, Wisconsin.

    2.    From January 2006 to May 2011 I served as Chief Medical Officer ("CMO") for MHSI. From August 2010 to May 2011 I served as the Interim President/CEO and CMO for MHSI after then-President/CEO C.C. Henderson died in August 2010. C.C. Henderson had served as MHSI President/CEO from 2002 until August 2010. In addition to serving as President/CEO, I continue to treat patients at MHSI.

3. MHSI offers preventative health, wellness and chronic disease management in primary care by physicians specializing in the care of underserved populations. MHSI's comprehensive services include Pediatrics, Family Medicine, Internal Medicine, Obstetrics and Gynecology, Midwifery, Podiatry, HIV Infectious Disease, Oral Health, adult and child Psychiatry. Additional onsite services offered include: behavioral health therapy, outreach social services, prenatal and chronic disease nursing case management, patient education, WIC and nutritional services, insurance benefit determination and pharmacy. MHSI serves everyone regardless of income or third party coverage and seeks to provide high quality care in accessible locations in Milwaukee County.

4. On November 30, 1999, MHSI entered into a Standard Service Agreement, a Standard Maintenance Agreement a Standard License Agreement, and a Hardware End User Agreement with Business Computer Applications, Inc. ("BCA") for use of a Clinic Management System ("CMS") that assisted MHSI with appointment scheduling, patient billing, and accounts receivable, among other things (hereinafter called "CMS Agreement").

5. On July 1, 2008, MHSI entered into a Business Associate Confidentiality Agreement, a Software License Agreement, a Third Party Software and Hardware End User Agreement, a Software Maintenance Agreement, an Application Service Provider Hybrid Data Center Support Services Agreement, and a Service Agreement with BCA for purposes of developing, installing and using an electronic medical record ("Pearl EMR") (hereinafter called "EMR Agreement") that would integrate with the existing appointment scheduling and patient billing CMS practice management system.

6. Despite MHSI paying BCA $3,083,607.64 since 2008 under the EMR Agreement and CMS Agreement, the Pearl EMR developed and installed by BCA has failed to be fully functional.

7. Nevertheless, the Pearl EMR currently is the only way for MHSI to access patient records housed on MHSI servers currently.

8. These patient records contain clinical notes, referral to medical specialist authorization requests, medication lists, problem lists, allergy reports, pediatric immunization records, obstetric documents, hospital records, surgical and consultation reports, pre-op documents, mammography and radiographic reports and chronic disease treatment plans for approximately 40,000 individuals.

9. The EMR Agreement was set to expire on June 30, 2013. Because of the various problems with implementation, failure of the Pearl EMR to ensure compliance with HIPAA, HITECH Act and Meaningful Use Stage II criteria as well as escalating expenses incurred with the Pearl EMR, MHSI decided to migrate to another EMR product, GE Centricity.

10. Before the expiration of the EMR Agreement, MHSI tried to address the transition from the Pearl EMR to the GE Centricity EMR by exploring a temporary extension of the Pearl EMR licensing agreement or the provision of a removable disk containing all the patient records so that MHSI would not face any disruption in patient record access. Exhibit A (July 5, 2013 Email from Dr. Tito Izard to Albert Woodard noting that Albert had specifically stated on June 21st that he could provide MHSI with a jump drive of all MHSI patient records if MHSI did not extend the license agreement).

11. BCA falsely represented to me that MHSI would not have any disruption in patient care during these negotiations because BCA has not followed through on its promise to

either maintain Pearl EMR connectivity or provide MHSI with a jump drive so that MHSI could have access to its patient records.

12. BCA's legal counsel wrote MHSI on June 5, 2013 stating that MHSI owed BCA $285,097.03 for products and services and that the letter served as a "final pre-litigation notice." Exhibit B.

13. As stated above, over the course of the EMR Agreement, MHSI paid BCA $3,083,607.64 for the Pearl EMR and CMS and had recently made payments to BCA of $8,443 on May 2013 and $25,400 in April 2013.

14. Despite these recent payments, numerous requests by MHSI for documentation of whether certain work was authorized by MHSI and detailed expenditures for such work, and continuous discussions between Dr. Izard and BCA's CEO about not disrupting patient record access while MHSI and BCA worked out payment issues and while MHSI transitioned to GE Centricity, BCA terminated MHSI's access to the Pearl EMR on June 30, 2013 by performing an unauthorized remote disconnection from MHSI's personal local servers housing MHSI's patient data.

15. As a result of this unauthorized access to MHSI's servers, since July 1, 2013, MHSI has been unable to access patient records for purposes of providing treatment, jeopardizing the health and safety of about 40,000 people.

16. Since July 1, 2013, MHSI has made repeated requests to BCA to restore Pearl EMR connectivity or provide MHSI with a removable disk containing all the patient records in a readable format per the previous discussions between Dr. Izard and BCA so that MHSI could continue providing treatment to its patients. *See* Exhibit A (Email exchanges between Dr. Tito

Izard and Albert Woodard) and Exhibit C (Letter from MHSI legal counsel to BCA's legal counsel).

17. Despite these repeated requests, good faith efforts to resolve the issue short of litigation and advice from BCA's legal counsel to restore Pearl EMR connectivity, BCA has refused to restore Pearl EMR connectivity or provide MHSI the patient records in a readable format on a removable disk unless MHSI makes a full or substantial payment toward the $285,097.03 it alleges MHSI owes BCA. (Izard Aff., ¶ 17, Exhibit A (July 1, 2013 Email from Albert Woodard to Dr. Tito Izard responding to Dr. Izard's question of how long it would take to re-establish connectivity to MHSI's patient data that BCA despite the advice of BCA's legal counsel to restore Pearl EMR connectivity, BCA would restore connectivity in exchange for approximately $300,000 and July 4, 2013 Email from Albert Woodard to Dr. Tito Izard responding to Dr. Izard's July 3, 2013 Email that stated it has been greater than 48 hours since MHSI patients have had access to any electronic health information that MHSI owes BCA approximately $300,000 in past due accounts receivable and would not provide MHSI with any access without "fair compensation.")).

18. Short of hiring another computer programmer to write a program to retrieve the patient records off MHSI's services, which could take a very long time, there is no other viable, quick option to retrieve the patient records so that MHSI can use those records for immediate patient treatment.

Dated this 15th day of July, 2013.

_____
Tito Izard, M.D.

Subscribed and sworn to before me
this 15 day of July, 2013.



_____
Notary Public State of Wisconsin
My Commission Expires: 6-12-2017