UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

MILWAUKEE HEALTH SERVICES, INC.,

    Plaintiff,

  v.

BUSINESS COMPUTER APPLICATIONS, INC.,

Case No. 13-CV-00797

    Defendant.

---

# BRIEF IN REPLY IN SUPPORT OF PLAINTIFF'S MILWAUKEE HEALTH SERVICES, INC. MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

It is highly unusual for a software vendor to deny access to patient records to a health care provider client that needs those records for patient treatment after the expiration of a license agreement. Yet, BCA has refused to turn over MHSI's patient medical records following termination of its license agreement unless MHSI will pay BCA all of the highly disputed amounts BCA claims to be due under those agreements. Indeed, as MHSI has alleged under its Computer Fraud and Abuse Act claim, BCA has improperly used MHSI's immediate need for its patient records as unfair leverage to demand MHSI to pay BCA monies that MHSI disputes it owes. Part of BCA's bullying behavior appears to have been triggered by MHSI's decision to contract with another electronic medical record vendor on a going forward basis. However, this does not excuse BCA from breaking the law.

BCA would like this Court to believe this action is about allegations of breach of contract, violation of copyright law, misappropriation of funds, or involvement of the Office of the Inspector General. (*See* BCA's Resp. and Opp. to MHSI's Mo. for Prelim. Injunction.

("Def's Response"), Dkt #14, at 1-2.  However, this motion and the underlying action are really about BCA's violation of both state and federal law and the health and safety of 40,000 patients in the Milwaukee, Wisconsin, area.

While the alleged facts concerning the parties' business relationship prior to June 30, 2013, provide some context to MHSI's claims before this Court, the veracity of the allegations are largely irrelevant.  BCA's unlawful conduct began on June 30, 2013, when it accessed MHSI's server and continues to this day.  In that regard, BCA's attempt to conflate this action with the action currently pending in the Northern District of Georgia is unproductive and should be disregarded.  On July 29, 2013, the District Court for the Northern District of Georgia denied BCA's Emergency Motion for Declaratory Judgment and MHSI's Motion to Transfer Venue to the Eastern District of Wisconsin.  (Declaration of Barbara J Zabawa, ¶ 1, Exh. A.)  In denying MHSI's motion to transfer, the Georgia court stated that there was no reason it could not hear BCA's contract claims while the Wisconsin court heard MHSI's clams about access to patient records, which it viewed as two separate issues.  (*Id.*at p. 31.)

Initially, contrary to BCA's assertion, MHSI does not have access to its patients' medical records.  (*See* Def.'s Response at 7-8)  MHSI lost access to its Image servers when, contemporaneous with BCA's remote shutdown of the Pearl server, MHSI's password to access the servers no longer worked. (Second Affidavit of Dr. Tito Izard, ("Second Izard Aff.") Dkt. #13, ¶¶ 10-17 [1]  Further, the hard drive BCA agreed to provide and which was deliverable to

---

[1] MHSI's motion to supplement the record, incorporating additional facts supporting the request for a preliminary injunction is currently pending before this Court. (Dkt. # 12, 13.)  It appears that BCA has responded, at least in part, to some of the allegations in Dr. Izard's Second Affidavit. (*See, e.g.,*

(footnote continued)

MHSI on July 19, 2013, (Woodard Dec., ¶ 59, Exhibit BCA-51) is not in a readable and searchable format, as requested numerous times by MHSI, and as needed to allow MHSI to treat patients. (Woodard Dec., ¶ 45, Ex. BCA-40; Second Izard Aff. ¶ 21, Exh. B.) Although MHSI has been tirelessly working to restore a portion of the patient records through other sources, there is still a portion of the patient records that can only be accessed through the Pearl server. (Second Izard Aff., ¶ 19; *see also* Woodard Dec., ¶ 57, Ex. BCA-54, letter from Dr. Izard to Woodard dated July 23, 2013). The immediate harm to patients that will result without access to the referral data is readily identifiable. (Second Izard Aff., ¶¶ 26-28.)

Second, MHSI has not, at any time, asked BCA to work for free. Instead, MHSI has repeatedly offered to pay the reasonable costs associated with providing it with access to its patient data for a limited period of time. (*See* Woodard Dec., ¶ 57, Ex. BCA-54.)

MHSI has offered two reasonable options to restore access to its patient records and avoid and abate irreparable injury:

1. Restoration of the Pearl software for at least 24 hours to allow MHSI to print off a list of the patient referral data; a *readable* removable disk or hard drive containing the patient data; and the password to MHSI's Image server or resetting the password to the Image server; or

2. Restoration of the Pearl software for 90 days and the password to MHSI's Image server or resetting the password to the Image server.

Thus far, BCA has refused to give MHSI meaningful access to its patient records. If this Court is unable to resolve to its satisfaction the factual disputes at issue in the parties' filings,

---

Def.'s Response at 7, citing the Woodard Declaration ("Woodard Dec."), Dkt #15, ¶¶ 41-42.) Further, the majority of the proffered facts from Dr. Izard's Second Affidavit are contained in a letter sent to BCA CEO Albert Woodard and attached to the Woodard Declaration filed by the Defendant. (*See* Woodard Dec., ¶ 57, Ex. BCA-54.)

MHSI respectfully requests that this Court schedule a hearing on MHSI's motion for preliminary injunction. A hearing will allow for resolution of the conflicting evidence after the credibility of the witnesses is tested by their presence before the court and after cross-examination. *See Gen. Elec. Co. v. Am. Wholesale Co.*, 235 F.2d 606, 608 (7th Cir. 1956).

## ARGUMENT

I.  **MHSI And Its 40,000 Patients Are Suffering And Will Continue To Suffer Irreparable Harm.**

Whether the movant will suffer irreparable harm is often described as the most important consideration in deciding whether to grant a preliminary injunction. *See, e.g., Reinders Bros., Inc. v. Rain Bird E. Sales Corp.*, 627 F.2d 44, 52 (7th Cir. 1980). BCA seeks to frame this action as one primarily about money and business decisions and, in doing so, understandably avoids the issue of patient care. Despite its assertion to the contrary, BCA is well aware of specific and concrete instances of harm caused by MHSI's inability to access its Image serves since June 30, 2013. (*See* Woodard Dec., ¶ 57 Ex. BCA-54.) These examples include:

1. A consulting physician having no ability to review the records of a young patient with Cystic Fibrosis;

2. The inability to perform follow-up with a 70-year-old female patient found to have an abnormality on a mammogram; and

3. The inability to provide authorization for a patient to receive an MRI for prompt and proper evaluation by a neurosurgeon.

The foregoing are merely a few examples of the harm caused by BCA's conduct and unwillingness to work with MHSI to restore access to the patient data. There will no doubt be additional instances of harm without relief from this Court.

## II. An Order From This Court Will Not Upset The Status Quo; It Will Restore The Status Quo.

BCA's assertion that this Court will force the parties into a business relationship and upset the "status quo" is misguided. There is no dispute that the two parties have decided to part ways – this fact was known to both parties before June 30, 2013. (*See* Woodard Dec., ¶ 39.) However, BCA fails to accurately describe the "status quo" because the "status quo" in this case is the "last uncontested status which preceded the pending controversy." *See Westinghouse Elec. Corp. v. Free Sewing Mach. Co.*, 256 F.2d 806, 808 (7th Cir. 1958). There cannot be any dispute that MHSI had access to its patient records prior to June 30, 2013, for purposes of rendering care. As the Second Circuit recognized:

> Obviously, where agreements which require joint action lead to disputes between the parties which cannot be dissolved short of litigation, it is impossible to place the parties in the exact positions which they enjoyed prior to their disagreement. It follows that the court must have discretion to fashion such a preliminary injunction as may best approximate past positions in the light of the basic rights of the parties.

*Unicon Mgmt. Corp. v. Koppers Co.*, 366 F.2d 199, 204 (2d Cir. 1966).

To that end, MHSI is not asking this Court to perform an arranged marriage, but rather to direct BCA to provide limited and temporary access of the patient data to MHSI at a reasonable cost and for a reasonable period of time. Ironically, it is BCA, through its unwillingness to reach a short-term agreement, who seeks to unnecessarily continue the parties business relationship for a period of one year or more. This Court is well-positioned to craft an order to restore MHSI's access to its patients data at a reasonable cost and time period.

## III. MHSI Has Made the Requisite Showing That it Will Succeed on the Merits.

MHSI is not required to prove the facts underlying its causes of action in order to receive equitable relief from this Court. *Reinders Bros., Inc.*, 627 F.2d at 52. Indeed, while the probability of success is a factor to be considered, this Court is not required to make a final

determination of the merits; rather, this Court is called upon to exercise its sound judicial discretion regarding the need to interim relief. *Pub. Serv. Comm'n of Wis. v. Wis. Tel. Co.*, 289 U.S. 67, 70 (1933). "In the preliminary injunction context, a 'likelihood of success' exists if the party seeking injunctive relief shows that it has a 'better than negligible' chance of succeeding on the merits. *Meridian Mut. Ins. Co. v. Meridian Ins. Grp., Inc.*, 128 F.3d 1111, 1114-15 (7th Cir. 1997) (citing *Int'l Kennel Club of Chi., Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1084 (7th Cir.1988)). The threshold for establishing this factor has been described as "low." *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 387 (7th Cir. 1984).

  A. **BCA Did Not Have Authority To Deny MHSI Access To Its Patient Records Or Disable MHSI's Access To Its Image Servers.**

MHSI has met its burden on First and Second Causes of Action of the Complaint. BCA violated the Computer Fraud and Abuse Act (18 U.S.C. §§ 1030(a)(5)(B) and 1030(a)(7)) by intentionally accessing MHSI's servers without authority and causing damage.

The only authority that the Pearl Software License Agreement and Application Service Provider Hybrid Data Center Support Services Agreement provide BCA is to terminate MHSI's access to the licensed programs, not MHSI's access to its patient records. (*See* Woodard Dec., ¶ 6, Exh. BCA-8, ¶¶ 1.2 and 4.6 and Exh. BCA-10, ¶ 8.2.) Moreover, that authority only kicks in when MHSI is late in payment. (*Id.*) BCA continues to claim that it is undisputed that MHSI owes BCA overdue payments. (*See e.g.,* Def's response at 2.) Yet, there is a significant dispute about the amounts owed. Dr. Izard has indicated numerous times to BCA that BCA owes it credits and discounts, which if applied, would likely eliminate the alleged overdue balance. (*See e.g.*, Affidavit of Dr. Tito Izard ("Izard Aff.") Dkt. # 5, ¶ 10, Exh. A; Woodard Dec., ¶ 57, Exh. BCA-54.) Thus, as long as these payments are in dispute, BCA has no authority under its contracts to terminate MHSI's access to its licensed programs. BCA simply used the dispute in

payments as an excuse to turn off Pearl access to force MHSI's hand in paying up. That is extortion.

Yet, even if MHSI was in default on payment under the Pearl contracts, which MHSI contends it was not, BCA's contracts only gave it authority to terminate access to the licensed programs, not its patient records. These are two distinct concepts.

Pursuant to the Business Associate Agreement between the parties, the patient records remained the property of MHSI. (Woodard Dec., ¶ 6, Exh. BCA-10.) BCA had no contractual authority to disturb that access and indeed, has a legal obligation under Wisconsin law to ensure MHSI has such access for patient treatment. BCA could have met its legal obligation in a number of ways, such as temporarily extending access to Pearl for a reasonable time and cost or providing MHSI with an external drive of the data in a readable, searchable format that MHSI could use immediately. It refuses to agree to any of these options.

Moreover, BCA assured MHSI before June 30, 2013 that patient care would not be disrupted. (Izard Aff., ¶ 10, Exhibit A.) Because of this assurance, BCA did not have authority to terminate patient record access and as a consequence, disrupt patient care.

In addition, there is no authority for BCA to deny MHSI access to its Image servers containing backup patient data. The authority to terminate access to the Pearl electronic medical record software is different than accessing MHSI's Image servers containing backup data. The circumstantial evidence is compelling: simultaneous with BCA's termination of the Pearl software MHSI lost access to its own Image servers that house the backup patient data. It is troubling that MHSI's password-protected access to its own Image servers was cutoff contemporaneously with BCA's remote access to the MHSI's computers for purposes of removing access to the Pearl server. (*See* Woodard Dec., ¶ 57, Ex. BCA-54, letter from Dr. Izard

to Woodard dated July 23, 2013.) BCA had no authority to disable or alter MHSI's ability to access it patient data stored on the Image servers. At a minimum, BCA exceeded its authorization when it shut off access to the Image servers and interrupted MHSI's ability to access its own servers. MHSI has no ability to determine how or why it can no longer access its Image serves until it is able to analyze the access history and, unfortunately, the only way to gain access to the server without the password is to hack into the system. Hacking into one's own computer system is unreasonable and risky. Hacking would also take quite some time and it would not give MHSI the immediate access to its patient records that it needs. (*Id*.)

    **B.    BCA Cites No Authority Prohibiting MHSI's Application Of Wis. Stat. § 146.82 In This Case.**

BCA cannot cite to any Wisconsin case prohibiting the application of Wis. Stat. § 146.82 to the facts of this case. MHSI's request for relief cannot be refused on the basis of a novel application of statute as a cause of action to remedy a wrong. The plain language of the statute indicates a sensible application in this case. Wis. Stat. § 146.82(2) states that "patient health care records *shall* be released upon request without informed consent in the following circumstances: 1) . . . to a health care provider . . . if any of the following is applicable : a) the person is rendering assistance to the patient; b) the person is being consulted regarding the health of the patient; c) the life or health of the patient appears to be in danger and the information contained in the patient health care records may aid the person in rendering assistance; . . . 3) [t]o the extent that the records are needed for billing, collection or payment of claims." Wis. Stat. § 146.82(2) (emphasis added). The Legislature did not limit the language of the statute to apply to only certain persons, such as record custodians. Rather, the plain language of the statute applies to anyone who has patient health care records and requires those persons to provide those records to treating providers. Wis. Stat. § 146.83(1m) reinforces that requirement.

Moreover, the plain language of the statute, read and interpreted in its entire context, requires more than just access to raw patient data that is unusable at any moment. BCA contends that MHSI already has "the health care records in question." (Def's Response at 19.) To the extent that BCA is referencing the hard drive it sent to MHSI on July 19, 2013, three weeks after shutting off access to its patient records, that hard drive contains unreadable and unusable data. (Second Izard Aff., ¶ 21, Exh. B.) To the extent that BCA is referencing MHSI's ability to access its Image servers containing patient data, MHSI is unable to access those servers because the password no longer works and BCA refuses to provide the password or reset it. (Woodard Dec., ¶ 57, BCA-54.) Yet, even if MHSI could access those servers, the data on those servers is not immediately usable. (*Id.*) If the language in Wis. Stat. § 146.82 requiring access to patient records is to mean anything, the most logical and sensible interpretation of those words is to require meaningful, immediate access to those records.

For example, Wis. Stat. § 146.82(2)(a)(2)c requires release of patient records to health care providers when the "life or health of the patient appears to be in danger and the information contained in the patient health care records may aid the person in rendering assistance." If this Court were to adopt BCA's suggested interpretation of the Wisconsin statute, then providing an physician with raw patient data that is unreadable would be sufficient in an emergency situation. It is doubtful that the Legislature meant provision of unreadable or unusable data is sufficient compliance with Wis. Stat. § 146.82. Rather, this Court must construe the language of the statute to arrive at a reasonable result and to not render the words of the statute meaningless. *See e.g., In re Merchants Grain, Inc.,* 93 F.3d 1347, 1353-54 (7th Cir. 1996). Under the more reasonable interpretation of the statute, BCA is obligated to provide MHSI its patient records in a usable format, which MHSI has repeatedly requested.

As requested by MHSI, that format may take several forms: 1) a readable, searchable external drive; and 2) a temporary extension of the Pearl software. Contrary to BCA's assertion, MHSI has never asked for free access to software; MHSI has always been willing to pay a fair price for a reasonable temporary extension of the Pearl contracts. (*See e.g*., Izard Aff., ¶ 10, Exh. A (noting that Dr. Izard asked Mr. Woodard about the cost associated with an extension of Pearl access to the end of MHSI's fiscal year).) What it has been unwilling to do is be bullied into year-long or multi-year contracts with BCA for its Pearl software just so BCA will allow MHSI access its patient records.

BCA's comparison of Wis. Stat. § 146.82 to the statutes encompassing the Wisconsin Fair Dealership law misses the mark. Section 146.82 is about access to patient records and the penalties for failing to provide access to a health care provider. *See* Wis. Stats. §§ 146.82(2)(a)2 and 146.84(2). Nothing in Wis. Stat. § 146.82 purports to force an agreement or contract to sell goods, use a trade name, trademark, logotype, et cetera. *See* Wis. Stat. § 135.02(3)(a) (defining dealership). Moreover, there are no extraterritorial concerns as it is well within this Court's jurisdictional authority to grant the relief sought by MHSI because this Court has personal jurisdiction over BCA and BCA's conduct is causing injury within this state. Under the circumstances, this Court has an interest in protecting MHSI's patients against injury. *See e.g*., *The Salton Sea Cases*, 172 F. 792, 813 (9th Cir. 1909), *cert. denied* 215 U.S. 603 (1909) ("Why may not a court restrain a party over whom it has jurisdiction from injuring property within its jurisdiction?"). BCA's refusal to allow MHSI access to its patient records is causing injury to persons and property in Wisconsin. MHSI is simply requesting that this Court provide it and 40,000 patients relief by ordering BCA to provide temporary access to MHSI's patient data at a reasonable cost for a reasonable time period.

## IV. The Harm BCA Would Experience, If Any, Is Greatly Outweighed By The Harm To MHSI And Its 40,000 Patients.

The issues relating to potential harm in this case are strikingly similar to the issues in play in a recent case out of the Western District of New York, *Clinical Insight, Inc. v. Louisville Cardiology Medical Group, PSC.*, 2011 WL 1549478 (W.D.N.Y. April 22, 2011). In that case, the plaintiff, a computer software provider, brought an action against the defendant medical group alleging a breach of the licensing agreement between the parties. *Id*. at *1. The plaintiff moved the court for a temporary restraining order, arguing that the defendant's continued access to the software will result in irreparable harm because valuable trade secrets and proprietary information would be comprised in light of the defendant being purchased by another healthcare system. *Id*. The defendant opposed the motion and asserted, *inter alia*, it no longer used the software as it was in the process of transferring its records from the plaintiff's system to a new electronic records system. *Id.* The court denied the plaintiff's motion finding that the software company failed to establish the requisite harm and further finding the requested relief would instead cause harm to third parties. *Id*. at *3. As the court explained:

> [O]lder medical records for approximately 40,000 Louisville Cardiology patients are stored in the Pronto system. Depriving Louisville Cardiology access to the records of its patients would create a severe risk of danger to the patients of Louisville Cardiology and Baptist, and therefore, I decline to Order Louisville Cardiology to return the Pronto software.
>
> Clinical Insight contends that the potential danger stemming from lack of access to Medical Records is a condition that was created by Louisville Cardiology's decision to continue to use Pronto for several years without paying for the annual licensing fee. Plaintiff contends that the defendant should not be insulated from the consequences of its decision to continue using Pronto without paying for it.
>
> Clinical Insight's argument, however, does not address the actual ramifications of denying Louisville Cardiology access to its patient's medical records.

*Id*. at *4.

Although the facts of this case are somewhat inverted from those in *Clinical Insight, Inc.*, the court's reasoning on the competing allegations of harm is instructive. Balancing the minimal harm in this case to BCA, if any, against the resultant harm in continuing to deprive MHSI of critical patient data weighs heavily in favor of MHSI.[2]

As to BCA's contention that MHSI is not really experiencing any harm in not being able to access its patient records, such contention has no merit. First, the purported delay does not belie the seriousness of MHSI's injury. In determining whether any alleged delay undercuts the alleged harm caused to the movant, this Court should consider "whether the defendant had been lulled into a false sense of security." *Ideal Indus., Inc. v. Gardner Bender, Inc.*, 612 F.2d 1018, 1025 (7th Cir. 1979). Here, MHSI was under the impression that BCA would work with it to maintain access to its patient data despite the expiration of the Pearl software contract. (Izard Aff., ¶¶ 10-11.) MHSI continued to attempt to work with BCA to resolve the issue after June 30, 2013; however, MHSI was forced to seek relief from this Court only after it was clear that BCA was not going to work with MHSI to restore access. (*Id*., ¶¶ 16-17.)

Second, BCA's reference to Dr. Izard's statements in a recent news article about MHSI's ability to get key information conveniently omits the remaining, more critical part of the statement. (Def's Response at 23.) In the remaining part of the statement, Dr. Izard explains how MHSI has had to cobble together key patient data from different sources, such as medication lists and lab results (DeLockery Dec., ¶ 4, Exh. B), but those pieces of the record do

---

[2] MHSI has reason to doubt BCA's contention that it can only provide access to the Pearl server for a minimum of a year. (*See, e.g.,* DeLockery Declaration ("DeLockery Dec."), Dkt. #16, ¶ 4, Ex. B at 2) (BCA spokesman Dave Scott indicating MHSI was offered a variety of extensions which, according to the article, included to the end of the month, for three months, and for a full year).)

not make up the entire record, which only one of the two options MHSI has outlined above can provide. It is hard to dispute that immediate access to a patient's entire medical record is essential for safe, effective care.

V.     **The Public Interest Is Best Served By Granting MHSI's Motion.**

BCA glosses over the strong public policy issues favoring relief. In doing so it elevates the interests of two private corporations over the safety of 40,000 patients for whom MHSI renders care. BCA's position that the public interest is best served by leaving MHSI to find a different way to solve its access to patient records issue ignores the significant ramifications that position would have on health care providers across the nation who have come to rely on various electronic medical record vendors for the safety and security of, and access to its patient records. Competition in the electronic medical records industry is fierce. (DeLockery Dec., ¶ 4, Exh. B.) Health care providers are expected to replace existing systems with systems offered by larger companies. (*Id.*) As that transition continues to occur, smaller companies like BCA may try to hold onto their business by holding hostage patient records in exchange for extending the life of their business. Allowing such behavior to occur would set a very bad precedent and put more patients' lives at risk. The public's interest is best served by keeping focused on the health and well-being of patients, which includes the ability of their treatment providers to have immediate access to patient records while electronic medical record systems evolve.

This Court is more than equipped to fashion a narrow order for relief that will allow MHSI access to its patient data for a limited period of time at a reasonable cost to BCA. Granting such narrow relief will protect the lives of thousands of patients while mitigating BCA's concern that it would have to cooperate with MHSI for an extended period of time.

## VI. MHSI's Does Not Come Before This Court With Unclean Hands.

MHSI does not present with unclean hands. As evidenced from the communications between Dr. Izard and Mr. Woodard, MHSI has been trying to find a way to secure access to its patient records in advance of June 30, 2013. (Izard Aff., ¶ 10, Exh. A.) Contrary to BCA's assertions, MHSI was not reckless in its conduct but rather relied on BCA's assurances that patient care would not be disrupted while MHSI transitioned its use of electronic medical records to a new vendor, which MHSI has every right to do. Yet, each time MHSI has tried to find a solution with BCA, BCA demands more than MHSI believes is necessary or to which BCA is entitled. (Woodard Dec., ¶ 57, Exh. BCA-54.) If on July 1, 2013 BCA had extended Pearl access for the month of July, as had been contemplated by the parties, all of BCA's alleged harm and these proceedings before the Court would have been averted. (*Id.*) BCA's concern about entering into one-year third party licenses after July 31st would not exist and MHSI would have had one month of extended access to Pearl to get its crucial patient information off MHSI's servers. Thus, if any party has unclean hands and has acted recklessly, it is BCA with its insistence that MHSI pay disputed amounts in exchange for allowing access to MHSI's patient records.[3]

Regardless, the fact that the parties are currently engaged in a dispute does not preclude this Court from entering an injunction under Rule 65. The equitable defense of unclean hands is

---

[3] Also, contrary to BCA's claim that it has no duty to properly maintain medical records, BCA ignores its statutory duty under 42 U.S.C. §§ 17931 and 17934, which require "Business Associates" under the Health Insurance Portability and Accountability Act ("HIPAA") to comply with HIPAA security and some privacy rules. As an electronic medical record software vendor for a health care provider, BCA qualifies as a HIPAA Business Associate. *See* 45 CFR § 160.103.

not an automatic bar for injunctive relief. *Johnson v. Yellow Cab Transit Co.*, 321 U.S. 383, 387 (1944); *see also Alpo Petfoods, Inc. v. Ralston Purina Co.*, 720 F. Supp. 194, 214 (D.D.C. 1989) aff'd in part, rev'd in part, 913 F.2d 958 (D.C. Cir. 1990) (unclean hands defense rejected where failure to grant the injunction would only increase the damage to the public).

There is no dispute that MHSI and BCA are at odds with one another. However, considerations of public health and safety and the public policy reflected in Wis. Stat. § 146.82 and HIPAA necessitate injunction relief from this Court. The rights of these two private litigants will be sorted out in time; the 40,000 patients cannot wait until that occurs. This Court's sound discretion to grant MHSI equitable relief should not be trammeled by the clean hands doctrine.

## CONCLUSION

Because MHSI has some likelihood of success on the merits of its causes of action alleged in the underlying Complaint, because monetary damages will not make MHSI whole and because it and the public will suffer irreparable injury if this Court does not grant its request for immediate relief, MHSI respectfully requests this Court to grant its motion for a preliminary injunction.

Alternatively, MHSI respectfully requests that this Court schedule a hearing on the motion should it determine there are material facts in dispute prohibiting the entry of an order on the parties' written submissions.

Dated this 30th day of July 2103  *s/ Barbara J. Zabawa*

                                             Barbara J. Zabawa
                                             State Bar No. 1030917
                                             Eugenia G. Carter
                                             State Bar No. 1011447
                                             Melinda Giftos
                                             State Bar No. 1056609

                                             *Attorneys for Plaintiff Milwaukee Health Services, Inc.*
                                             WHYTE HIRSCHBOECK DUDEK S.C.
                                             P.O. Box 1379
                                             Madison, WI 53701-1379
                                             Telephone:  608-255-4440
                                             Fax:  608-258-7138
                                             Email: bzabawa@whdlaw.com
                                                          gcarter@whdlaw.com
                                                          mgiftos@whdlaw.com