UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

MILWAUKEE HEALTH SERVICES, INC.,

        Plaintiff,

  v.

BUSINESS COMPUTER APPLICATIONS, INC.,

        Defendant.

Case No. 13-CV-00797

---

# MOTION TO RECONSIDER THE COURT'S
# DECISION AND ORDER DATED JULY 31, 2013

Plaintiff Milwaukee Health Services, Inc. ("MHSI"), through its attorneys, hereby moves the Court to reconsider its Decision and Order dated July 31, 2013 denying MHSI's motion for a preliminary injunction ("Order"). Defendant Business Computer Applications, Inc. ("BCA") improperly disabled MHSI's access to approximately 40,000 patient medical records, despite making numerous representations to MHSI that it would not create any disruption in MHSI's ability to access its patient medical records, and despite MHSI undisputedly owning such records. BCA's refusal to provide MHSI with access to its patient medical records clearly violates state and federal law and is causing irreparable harm to MHSI, its patients, and the community MHSI serves.

Nonetheless, the Court summarily denied MHSI's motion on two grounds. First, it held that MHSI had an adequate remedy at law because it could pay BCA's demands for hundreds of thousands of dollars – even if such demands are extortionate – and then later seek monetary damages from the courts for having to make such payments. Second, the Court held that MHSI has unclean hands because it should have better planned for the transition of its patient medical records.

The Court's holdings, however, are based on facts not in the record, disregard conflicting facts in the record, and demonstrate a fundamental misunderstanding of MHSI and MHSI's financial situation. The Court's Order also disregards important arguments and evidence that it should have properly weighed in deciding MHSI's motion for preliminary injunction, such as the irreparable harm to MHSI's patients, the public interest at issue, MHSI's likelihood of success on the merits and the balance of harms. Accordingly, MHSI respectfully requests the Court to reconsider its denial of MHSI's motion for preliminary injunction and to enter a preliminary injunction.

**ARGUMENT**

**I.     LEGAL STANDARD**

A district court should grant a motion for reconsideration when: (1) the court has patently misunderstood a party; (2) the court has made a decision outside the adversarial issues presented to the court by the parties; (3) the court has made an error not of reasoning but of apprehension; (4) there has been a controlling or significant change in the law since the submission of the issue to the court; or (5) there has been a controlling or significant change in the facts since the submission of the issue to the court. *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990). Motions to reconsider ask the Court to reexamine its earlier decision in light of additional legal arguments, a change of law, or an argument that was overlooked. *See Mungongo v. Gonzales,* 479 F.3d 531, 534 (7th Cir. 2007). Whether to grant a motion for reconsideration rests solely within the discretion of the district court. *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996). A motion for reconsideration may be brought under Federal Rules of Civil Procedure 59(e) or 60(b). Rule 59(e) allows the Court to alter or amend a judgment, and Rule 60 allows the Court to correct a judgment, order or other part of the record.

In assessing whether a preliminary injunction is warranted, a court must consider whether the

party seeking the injunction has demonstrated that: 1) it has a reasonable likelihood of success on the merits of the underlying claim; 2) no adequate remedy at law exists; 3) it will suffer irreparable harm if the preliminary injunction is denied; 4) the irreparable harm the party will suffer without injunctive relief is greater than the harm the opposing party will suffer if the preliminary injunction is granted; and 5) the preliminary injunction will not harm the public interest. *Kiel v. City of Kenosha*, 236 F.3d 814, 815-16 (7th Cir. 2000)).

In this case, the Court should reconsider its Order refusing to grant preliminary injunctive relief to MHSI on the grounds that it misunderstood MHSI and critical facts relating to MHSI, it made an error of apprehension when finding that MHSI had an adequate remedy at law, and it overlooked important legal arguments and issues that should have been considered in weighing whether a preliminary injunction was appropriate.

## II. MHSI DOES NOT HAVE AN ADEQUATE REMEDY AT LAW IN THIS CASE.

The Court denied MHSI's motion for preliminary injunction on the grounds that MHSI has an adequate remedy at law. The Court held that MHSI may obtain access to its patient records by simply complying with BCA's demands for hundreds of thousands of dollars in payment and by obtaining a year-long license extension to use BCA's software. The Court reasoned that even if BCA's demands are extortionate, MHSI can always later bring an actionable claim for damages against BCA. (Order, pp. 2-3.).

This holding is fundamentally flawed for several reasons.

### A.     MHSI Does Not Have the Financial Ability to Pay BCA's Demands.

First, all of BCA's demands required MHSI to pay BCA hundreds of thousands of dollars in advance of receiving access to its own patient medical records. (*See* Dkt. No. 5, ¶¶ 16-17, Ex. A; *see also* Declaration of Tito Izard, M.D. in Support of Motion to Reconsider, 08/06/2013 ("Third Izard

Decl."), ¶ 2.) There is nothing in the record to support the Court's assumption that MHSI has the financial ability to make such a large payment to resolve this issue.

MHSI did not and does not have the financial ability to pay the amounts BCA is demanding. (*See* "Third Izard Decl.", ¶ 3.) As reflected in the record, MHSI is a Federally Qualified Health Center ("FQHC") that provides cost-effective primary care medical services to Milwaukee's underserved communities. (Third Izard Decl., ¶ 4; Dkt. No. 5, ¶ 1.) FQHCs provide primary care services to uninsured and underinsured communities to provide much-needed services and to help relieve urban hospitals that are often inundated with uninsured people seeking primary care in the emergency room instead of in community-based clinics like MHSI. (Third Izard Decl., ¶ 4.)

However, unlike many non-FQHC providers, MHSI is not flush with cash. MHSI relies heavily upon governmental funding to operate its health care centers. Eighty-one percent (81%) of MHSI's patient visits are funded by Medicaid and Medicare reimbursements. Federal, State and local grants subsidize MHSI's ability to provide medical, dental and behavioral health services to the uninsured population. MHSI also relies on such grants for many of its other operational needs. For example, MHSI received federal grant money to implement its EMR software system. (Third Izard Decl., ¶ 5.) MHSI, like other FQHCs, operates on a very minimal margin and simply does not have hundreds of thousands of dollars available to settle extortionate claims and then later try to seek relief in the courts for having to pay such claims. (Third Izard Decl., ¶ 6.)

Prior to BCA's termination of MHSI's Pearl EMR license, MHSI was paying BCA approximately $8,400 per month for full access to all of the functionality of BCA's Pearl EMR software, including the features that allowed MHSI to fax prescriptions, send referrals, create new records, and more. (Third Izard Decl., ¶ 7.) BCA's subsequent demands for payment of hundreds of thousands of dollars in advance to provide limited access to the Pearl EMR software so that MHSI

could simply retrieve and print copies of its own records was therefore not only a drastic increase in what MHSI had been paying historically, it also simply was not and is not feasible for MHSI to pay. (Third Izard Decl., ¶ 8.)

To make matters worse, MHSI's inability to access its patient medical records is seriously hindering MHSI's ability to receive payments and reimbursements for claims for services that were rendered in the past several months. During the claim processing procedure, it is very common for insurers to request further information on a claim prior to paying it. MHSI cannot respond to such inquiries under applicable laws and regulations without first consulting and verifying the information from its medical records. Accordingly, MHSI has numerous unpaid claims that are currently being held up until it can ultimately access its records and verify the claims, and MHSI's operating revenues are now even lower than they should be. (Third Izard Decl., ¶ 9.) Indeed, MHSI has already been forced to close one clinic and lay off several employees due to the crushing financial impact of this dispute. (Third Izard Decl., ¶ 10.)

MHSI does not have an adequate remedy at law in this case. To the contrary, BCA's refusal to provide MHSI with access to its patient medical records is causing irreparable harm to MHSI, its patients, and the population it is designed to serve. The Court appears to have misunderstood the nature of a Federally Qualified Health Center and MHSI's financial ability when it held that MHSI should have simply paid the amounts demanded – even if extortionate – and seek relief from the Court for those payments at a later date.

B. <u>BCA's Extortionate Demand for Payment Does Not Automatically Provide MHSI With an Adequate Remedy at Law.</u>

Second, the Court's conclusion that MHSI had an adequate remedy because it could have ponied up to BCA's extortionate demands is not only factually incorrect, it is also illogical and unfair. Indeed, the Court is essentially holding that because BCA agreed to turn over the records if

MHSI paid hundreds of thousands of dollars, there is automatically an adequate remedy at law. Money can solve the issue.

Taken to its logical conclusion, however, this would mean that any time a wrong-doing party offers to settle for some amount – even if unreasonable and exorbitant – it could avoid entry of a preliminary injunction because such offer would provide an alternate monetary solution and "an adequate remedy at law." This is a legal *non sequitur* and the Court should amend its Order to avoid creating this dangerous and unfounded precedent.

### C. Even if MHSI Could Have Paid BCA's Demands, it Would Not Have an Actionable Claim Under Which it Could Seek Damages.

Third, even if MHSI had the financial wherewithal to pay BCA the hundreds of thousands of dollars BCA demands prior to providing access (which it does not), the Court's conclusion that MHSI would have an actionable claim against BCA for those amounts is incorrect. It is hard to imagine a theory under which MHSI could sue BCA if it gave in to BCA's demands and agreed to pay the amounts in exchange for access and then subsequently obtained such access. BCA's offers to provide the records for payments were settlement demands. If MHSI agreed to them, it would have no later recourse to pursue in the court system – even though it clearly disputes the amounts BCA alleges to be due and believes BCA is attempting to dramatically overcharge BCA for access.

### D. The Court Disregarded MHSI's Clear Evidence of Irreparable Harm.

Finally, by concluding that MHSI had an adequate remedy at law, the Court ignored MHSI's clear evidence of irreparable harm – namely, MHSI's inability to properly treat its patients. MHSI provided specific examples of ways MHSI's patients have been harmed by BCA's failure to provide MHSI with access to its patient medical records. (Dkt. No. 13, ¶¶ 25-28.) There is a 70 year-old woman who may have breast cancer, but her diagnosis and treatment is being unduly delayed because MHSI cannot access the records of her abnormal mammogram. (*Id.*, ¶ 27.) A physician is

unable to access the records of a young patient with cystic fibrosis for treatment. (*Id.,* ¶26.)  A patient is having neurological symptoms, but cannot get the referral she needs because her records are not available. (*Id.,* ¶ 28.)

There are many more examples MHSI can provide and no doubt, there has been more harm to patients as each day progresses and MHSI is unable to access its records. This is irreparable harm that the Court should not ignore.

### III. MHSI DOES NOT HAVE UNCLEAN HANDS IN THIS CASE.

The second reason the Court denied MHSI's motion for preliminary injunctive relief is because "equitable relief is denied to a plaintiff whose recklessness caused his claimed injury." (Order, p. 3.)  The Court held that MHSI "got itself into this predicament because it tried to transition to another provider, but couldn't complete the transition before the previous contract with BCA expired." (*Id.*)  The Court found that MHSI had five years to plan for the transition, but waited too long. (*Id.*)  However, the Court's finding that MHSI acted recklessly or with unclean hands is contrary to the evidence of the record and represents a misunderstanding the relationship between the parties and the assurances BCA provided to MHSI prior to terminating its access to its patient medical records.

MHSI did not have five years to plan for the transition. While MHSI entered into the license with BCA relating to the Pearl EMR software five years ago, the parties did not contemplate that their relationship would definitively end on June 30, 2013. To the contrary, the agreement was automatically renewable and historically, the parties remained in long-term, ongoing licensing agreements. For example, the parties entered into the agreements relating to the CMS practice management software in 1999 and that agreement is still in effect and ongoing. (*See* Dkt. No. 6-2; Third Izard Decl., ¶ 12.)

Prior to the termination of the Pearl EMR agreement, MHSI worked earnestly with BCA to make a long-term relationship between the parties work. This is true despite major functionality problems over the years and despite the U.S. Department of Health and Human Services Health Resources and Services Administration ("HRSA") strongly recommending that MHSI replace its Pearl EMR system with a system that is more reliable, has better reporting capability and is able to provide more support for the organization in order for MHSI to move toward becoming certified as a Patient-Centered Medical Home ("PCMH"). (Third Izard Decl., ¶ 13.)

Ultimately, however, the relationship did not endure. MHSI made the decision to switch to GE Centricity and BCA made the decision to terminate MHSI's license. (*See* Dkt. No. 5, ¶ 9; Dkt. No. 15, ¶ 35-37).

As reflected in the record, however, after the parties decided to part ways, BCA repeatedly assured MHSI that it would not have any disruption in access to its records despite the fact that BCA was terminating the agreement. (Dkt. No. 5, ¶ 10-11; Dkt. No. 13, ¶ 3.) So while MHSI presumably could have been urgently printing its records prior to the termination of the license agreement, MHSI did not believe it needed to based upon BCA's assurances. Indeed, MHSI did not know that BCA was going to improperly enter into MHSI's network and shut off all access to its patient medical records until BCA did so.

Furthermore, the Court should not disregard the fact that BCA not only shut off MHSI's access to the Pearl EMR software, it also, without authorization, disabled or altered the password on MHSI's back-up image servers at the same time. (*See* Dkt. No. 13, ¶¶ 8-16.) Thus, MHSI cannot access the stored images of its patient medical records that are located on MHSI's own servers. (Dkt. No. 13, ¶ 14; *see also* Third Izard Decl., ¶ 11.) BCA is continuing to refuse to reset the password – even though doing so would take only a few minutes of BCA's time. (Dkt. No. 13, ¶¶ 8-16; Third Izard Decl., ¶ 11.) The only way MHSI can now retrieve its patient medical records is by

hiring someone to hack into its own servers, which would threaten the integrity of the underlying data. (Dkt. No. 13, ¶ 17; Third Izard Decl., ¶ 11.)

If anyone has unclean hands in this scenario, it most certainly is BCA – not MHSI.

## IV. BCA IS REQUIRED UNDER LAW TO PROVIDE MHSI WITH ITS RECORDS.

In its Order, the Court wholly ignored the merits of MHSI's claims. However, under the plain language of Wisconsin Statute Section 146.82, BCA is violating the law by refusing to provide MHSI with its patient medical records. It also violated 18 U.S.C. § 1030 by: (1) entering MHSI's systems and servers without authorization and disabling MHSI's access to its patient medical records: and (2) by demanding hundreds of thousands of dollars from MHSI before it will restore the damage it has caused to MHSI and its computer servers. The Court ignored this important issue entirely in its ruling. It also ignored the policy impact it would create by allowing a software provider to hold a health care provider's patient medical data hostage when payments are in dispute. It also failed to balance the harms between the parties and failed to consider the public interest and public impact of its decision. These are critically important issues that the Court should have considered before denying MHSI's motion.

## CONCLUSION

The Court's Order on MHSI's motion for preliminary injunction is inconsistent with the deep-rooted power of equity to do what is necessary and appropriate to achieve justice in this case. *See Hecht Co. v. Bowles,* 321 U.S. 321, 329 (1944). For all of the reasons set forth herein, MHSI respectfully requests the Court to reconsider and to enter the preliminary injunctive relief requested by MHSI in its motion.

Dated August 8, 2013.

                                              s/ *Barbara J. Zabawa*
                                              Barbara J. Zabawa
State Bar No. 1030917
Eugenia C. Carter
State Bar No. 1011447
Melinda Giftos
State Bar No. 1056609

*Attorneys for Plaintiff Milwaukee Health Services, Inc.*
WHYTE HIRSCHBOECK DUDEK S.C.
P.O. Box 1379
Madison, WI 53701-1379
Telephone: 608-255-4440
Fax: 608-258-7138
Email: bzabawa@whdlaw.com
       gcarter@whdlaw.com
       mgiftos@whdlaw.com