UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MILWAUKEE HEALTH SERVICES, INC.,

    Plaintiff,

v.

BUSINESS COMPUTER APPLICATIONS, INC.,

    Defendant.

Case No. 13-CV-00797

**REPLY IN SUPPORT OF MOTION TO RECONSIDER THE COURT'S DECISION AND ORDER DATED JULY 31, 2013**

Plaintiff Milwaukee Health Services, Inc. ("MHSI"), through its attorneys, files this reply in support of its Motion to Reconsider the Court's Decision and Order Dated July 31, 2013 ("Motion").

BCA continues to attempt to frame MHSI's request for a preliminary injunction as something that was born from MHSI's unwillingness to come to the table and pay BCA's "commercially-reasonable" offer. However, MHSI disputes the reasonableness of BCA's demands and submits that BCA has been picking and choosing facts from both within and outside of the record in an attempt to cast MHSI as unreasonable. Moreover, several of the facts advanced by BCA to allegedly establish the existence of an adequate remedy at law are the product of the settlement discussions between the parties and should be excluded under Federal Rule of Evidence 408. *See Wm. Wrigley Jr. Co. v. Swerve IP, LLC*, 900 F. Supp. 2d 794, 803-04 (N.D. Ill. 2012) (excluding all evidence of settlement discussions, both prior to and after commencement of the action, offered by party in opposition to a request for a preliminary injunction).

Further, it cannot be credibly said that MHSI is "sandbagging" BCA or the Court. "Sandbagging" occurs when one party intentionally withholds its best evidence and/or argument until the opposing party does not have an adequate opportunity to respond. *See, e.g., Pike v. Caldera,* 188 F.R.D. 519, 532 n.23 (S.D. Ind. 1999) (quoting *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 741–42 (7th Cir. 1999) ( "[A]bsent an appellate waiver rule, a litigant might try to sandbag the district court by presenting for the first time on appeal arguments never raised below."); *Escobar v. O'Leary*, 943 F.2d 711, 716 (7th Cir. 1991) (Posner, J., dissenting) ("Sandbagging occurs when a defendant raises an objection not made at trial, thereby depriving the trial judge of the opportunity to avoid making the mistake of which defendant later complains or to create a record on the issue.")). MHSI did not intentionally withhold any evidence to support its case for a preliminary injunction. Rather, this case is in a very early stage and MHSI presented the Third Izard Declaration (dkt. #23) for two purposes: (1) to address the Court's misconception about MHSI's financial ability to meet BCA's unreasonable demands;[1] and (2) to update the Court with new events that have occurred since MHSI filed the first and second affidavits of Dr. Izard.

As for addressing the Court's misconception, it is MHSI's position that the Court made an error of apprehension when it found that, by meeting BCA's demands, MHSI had an adequate remedy at law. Indeed, a court may grant reconsideration to more carefully consider the record if the "extent and significance of … arguments was not fully realized and examined in the court's

---

[1] BCA improperly asserts, without citation to an affidavit, that it "made [a] request in writing to MHS's counsel on August 8, 2013, just after receiving the Motion and the Third Izard Declaration, and requested an expedited response. MHS did not respond." *See* BCA's Response, dkt. # 28 at 4 n.3. The Court should disregard this unattested assertion of what can only be characterized as an improper use of settlement discussions under Fed. R. Evid. 408 and a premature attempt at informal discovery. MHSI asks this Court to decline to attribute the lack of a response with a refusal to provide the information requested.

initial analysis." *Dougherty v. Farmers New Century Ins. Co.*, 2007 WL 1074756, *5 (M.D. Pa. 2007). MHSI is merely attempting to correct the Court's statement that "MHSI can get access to its patient records if it simply complies with BCA's demands." (Order, dkt. #19, at 2.) The Court's assumption that MHSI can pay whatever BCA demands is an error of apprehension. The purpose of the Third Izard Declaration is to correct a manifest error of fact about the financial viability of MHSI. *Publishers Res., Inc. v. Walker-Davis Publ'ns., Inc.*, 762 F.2d 557, 561 (7th Cir. 1985). It appears that the Court overlooked the facts that MHSI is a Federally Qualified Health Center ("FQHC") that serves everyone regardless of income in Milwaukee County and that it recently experienced a change in leadership. MHSI presented these facts in the First Affidavit by Dr. Izard. (First Aff. of Tito Izard, M.D., dkt. #5, ¶¶ 1-3.)

These facts were meant to reveal that MHSI is not a wealthy healthcare provider and that financial issues began under a different leader. The reality of operating a FQHC in inner-city Milwaukee is that MHSI must rely primarily on government funding to operate its clinics and is able to fund its electronic medical record system through grant funds, not general purpose revenues. (Third Izard Decl., dkt. #23, ¶ 5.) Moreover, BCA's contention that MHSI has sufficient funds to meet BCA's demands is disingenuous in light of the facts BCA itself has advanced previously. Specifically, BCA currently contends that MHSI must have sufficient funds if it could pay BCA over $600,000/year or at the very least MHSI could borrow the money to make an upfront payment of at least $150,000 for limited access to Pearl. (*See, e.g.*, BCA's Resp. to MHSI's Mo. To Reconsider, dkt. #28, at 4.) Yet, BCA pointed out in its Brief in Opposition to MHSI's Motion for Preliminary Injunction the financial hardships MHSI faces. (*See, e.g.,* BCA's Resp. and Opp. to MHSI's Mo. for Prelim. Injunction, dkt. #14 at 1.) These financial hardships that BCA itself references support the fact that MHSI does not have the

ability to pay whatever amounts BCA demands to get access to MHSI's patient records. The financial hardships also seriously hinder MHSI's ability to borrow money to make such large payments to BCA. Indeed, if MHSI could borrow funds, it would be doing so rather than closing clinics and laying off employees. (Third Izard Decl., dkt. #23, ¶ 10.)

Thus, BCA's current contention that MHSI has sufficient funds to pay BCA's demands is baseless and fails to acknowledge the exorbitant nature of BCA's offer. Before June 30, 2013, MHSI was paying BCA $8,400/month for full access to Pearl. (Third Izard Decl., dkt. #23, ¶ 7.) BCA's offer to provide one year of limited access to Pearl for an upfront payment of $150,000 works out to be $12,500/month. (Decl. of Albert Woodard, dkt. #15-41.) BCA's offer to provide one year of full Pearl access for an upfront payment of $210,000 equates to $17,500/month. (*Id.*) It is troubling that BCA would demand MHSI pay more than two times the amount it had been paying for full Pearl access when BCA knew MHSI needed access to its patient records and was facing financial hardship, and expect MHSI to pay for that access in one lump sum rather than month to month payments.

BCA knew that its offer to restore limited access to Pearl for an upfront payment of $150,000, an amount that was a drastic increase from the monthly payments MHSI had been making to BCA for full Pearl access, was financially impossible for MHSI to accept. (Third Izard Decl., dkt. #23, ¶ 8.) For MHSI, BCA's offer is not commercially reasonable or plausible. Because MHSI is not able to comply with BCA's demands and therefore get access to its patient records, traditional legal remedies are inadequate in this case. (Order, dkt. #19 at 1) (citing *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of United States of Am., Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008)).

As for presenting newly discovered evidence, the Third Izard Declaration points out that MHSI's dispute with BCA over access to MHSI's patient records has impeded MHSI's ability to receive payments and reimbursements for claims for services rendered in the past several months. (Third Izard Decl., dkt. #23, ¶ 9.) This financial impact of this dispute has also caused MHSI to lay off employees and close a clinic. (*Id.*, ¶ 10.) These hardships were not readily apparent at the time MHSI filed its motion for a Temporary Restraining Order/Preliminary Injunction; MHSI remained hopeful that BCA or this Court would provide MHSI access to its own patient records either through Pearl access or MHSI's backup server. As the Court denied MHSI's motion and the likelihood of reaching an agreement with BCA on patient record access diminishes, factual consequences unfold. Such is the case here.

Other courts have taken into account the lack of full factual development when a case in its earliest stages. *See, e.g., New England Braiding Co., Inc. v. A.W. Chesterton Co.*, 746 F. Supp. 1200, 1201 (D. Mass. 1990) (holding case open for sixty days so plaintiff could move court to reconsider motion for summary judgment because not all of the facts have been developed at an early stage of the case); *Doe v. District of Columbia*, 706 F. Supp. 2d 128, 132 (D.D.C. 2010) (refusing to dismiss a case at early stage of litigation when factual underpinnings of plaintiff's legal claims are not yet clear and when parties have addressed potentially complex legal issues raised in complaint in only a cursory matter). MHSI asks this Court to consider the early stage of this case and that key facts continue to unfold when considering the purpose of Dr. Izard's Third Declaration. The Third Izard Declaration provides further insight as to what it means to be a FQHC facing financial difficulty and how this dispute is adversely affecting MHSI's operations. (Third Izard Decl., dkt. #23, ¶¶ 9-10.)

BCA balks at MHSI's characterization of BCA's proposed extension agreement as constituting "settlement demands." Yet, BCA conveniently ignores its offer to MHSI to extend access to Pearl before June 30, 2013, which conditioned an extension on MHSI also paying amounts that MHSI disputes and that are now the subject of the breach of contract action currently pending in the Northern District of Georgia. (*See, e.g.*, First Aff. of Tito Izard, M.D., dkt. #5, ¶ 17, Exhibit A) (patient data access would require (1) a payment of $121,334.00; (2) a one-year contract extension of various licenses and agreements for $210,000, to be paid quarterly; and (3) a payment plan to pay off what BCA alleged it is owed in past-due amounts.)

Accepting such an offer would result in MHSI having to make concessions about amounts disputed in the Georgia action. In other words, the supposed remedy available to MHSI places it in an untenable position in another pending lawsuit.

It must be noted and has not been disputed that MHSI is the owner of the patient records and the servers to which MHSI has been denied access and that MHSI needs those records to treat patients. (*See* Decl. of Albert Woodard, dkt. #15, ¶ 6, Exhibits BCA-5 through BCA-10 (attaching the "Pearl Contracts" which indicate that MHSI owns its patient data). MHSI has simply asked the Court to enter an order requiring BCA to provide MHSI access to the records and servers MHSI owns so that MHSI may continue to treat patients while the parties sort out their differences concerning the disputed amounts that are the subject of the Georgia action. MHSI has always been willing to provide BCA with monthly security commensurate to the reasonable costs to BCA to provide access to MHSI's patient records for a reasonable time period. What MHSI is unwilling and unable to do, and should not be required to do, is to succumb to BCA's unreasonable and impossible demands to make upfront payments for year-long access and forfeit its rights for relief in exchange for patient record access. Using

something as serious as patient record access as leverage to get disputed monies is not a commercially-reasonable contract remedy. The Court wrongfully assumes that MHSI would have not only the funds to comply with BCA's unreasonable demands, but that it would have the funds to sue BCA afterward to recoup those damages at a later point. (Order, dkt. #19, at 2-3.)

Patient lives continue to be at stake. MHSI's request for temporary access to Pearl or access to MHSI's patient records in a readable, searchable format at a cost that MHSI can afford so that MHSI patients can get the care they need is not an unreasonable request of BCA or of this Court. It cannot be that this Court would permit a party's offer that is impossible for the other party to accept to serve as an adequate remedy at law.

## CONCLUSION

For all of the reasons set forth herein, MHSI respectfully requests the Court to reconsider and to enter the preliminary injunctive relief requested by MHSI in its motion.

Dated September 13, 2013.

                                              s/ *Barbara J. Zabawa*
Barbara J. Zabawa
State Bar No. 1030917
Eugenia C. Carter
State Bar No. 1011447
Melinda Giftos
State Bar No. 1056609

*Attorneys for Plaintiff Milwaukee Health Services, Inc.*
WHYTE HIRSCHBOECK DUDEK S.C.
P.O. Box 1379
Madison, WI 53701-1379
Telephone: 608-255-4440
Fax: 608-258-7138
Email: bzabawa@whdlaw.com
       gcarter@whdlaw.com
       mgiftos@whdlaw.com